UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JEREMY CADE,

                Plaintiff,

     v.

CARRIE HART,
*Commissary Supervisor,*
*Formerly known as John Doe*
*Industrial Commissary Supervisor,*

                Defendant.

No. 9:22-CV-00751
(ECC/PJE)

---

**APPEARANCES:**

JEREMY CADE
18-B-0136
3531 Gaines Basin Rd.
Albion, New York 14411
Plaintiff pro se

NYS Office of the Attorney General
Litigation Bureau
The Capitol
Albany, New York 12224
Attorneys for Defendant

**OF COUNSEL:**

ANTHONY HUNTLEY, ESQ.
BRIAN W. MATULA, ESQ.

**PAUL J. EVANGELISTA**
**U.S. Magistrate Judge**

### REPORT-RECOMMENDATION & ORDER[1]

Plaintiff pro se Jeremy Cade ("plaintiff"), an individual incarcerated in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"),

---

[1] This matter has been referred for a report and recommendation by the Honorable Elizabeth C. Coombe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

commenced this action by filing a civil rights complaint on July 18, 2022, pursuant to 42 U.S.C. § 1983.  *See generally* Dkt. No. 1.  Plaintiff's only surviving claim is an Eighth Amendment conditions-of-confinement claim against defendant Carrie Hart.  *See* Dkt. No. 16.  Currently before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56.  *See* Dkt. No. 30.  Plaintiff did not respond to the motion.  For the reasons set forth below, the undersigned recommends that defendant's motion be granted.

## I.  BACKGROUND

### A.  Facts

At all relevant times, plaintiff was incarcerated at Great Meadow Correctional Facility, where defendant was employed as the prison's Commissary Supervisor.  *See generally* Dkt. Nos. 16, 30.  Plaintiff worked in the prison's commissary warehouse under defendant's supervision.  *See* Dkt. Nos. 16; 30-2.  On September 30, 2020, while working in the commissary warehouse, plaintiff injured his foot using a pallet jack.  *See* Dkt. Nos. 16 at 3; 30-2 at 4.  Plaintiff suffered a broken foot as a result of the accident.  *See* Dkt. No. 16 at 5.

Immediately following the accident, plaintiff was taken to the prison's infirmary and assessed by a doctor.  *See* Dkt. Nos. 16 at 5; 30-2 at 4.  In the weeks following, plaintiff filed a series of grievances regarding his alleged inability to access additional medical care.  *See* Dkt. No. 16 at 5.  Plaintiff does not attribute this lack of medical care to defendant.  *See* Dkt. No. 30-5 at 34-35.  Plaintiff has not alleged, and the record does not reflect, that he ever filed a grievance arising out of his conditions-of-confinement claim against defendant Hart.  *See* Dkt. Nos. 16; 30-9; 30-10; 30-11.

B. **Procedural History**

Plaintiff filed his initial complaint against the State of New York and New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1. Plaintiff additionally submitted a motion for leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 2. On September 15, 2022, U.S. District Judge David Hurd granted plaintiff's IFP application and dismissed without prejudice plaintiff's claims, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), for failure to state a claim upon which relief may be granted and as barred by the Eleventh Amendment. *See* Dkt. No. 9.

On October 21, 2022, plaintiff filed an amended complaint, naming John Doe Industrial Commissary Supervisor, John/Jane Doe Great Meadow Superintendent, and John/Jane Doe Great Meadow Medical Department as defendants. *See* Dkt. No. 11. On December 14, 2022, Judge Hurd accepted plaintiff's amended complaint as the operative pleading and construed it to assert (1) an Eighth Amendment conditions-of-confinement claim against defendants John Doe Industrial Commissary Supervisor and John/Jane Doe Great Meadow Superintendent, and (2) Eighth Amendment medical indifference claims against defendants John/Jane Doe Great Meadow Superintendent and John/Jane Doe Great Meadow Medical Department. *See* Dkt. No. 12. The Decision and Order dismissed plaintiff's claims against John/Jane Doe Great Meadow Medical Department and John/Jane Doe Great Meadow Superintendent without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted. *See id.* However, the Court concluded that plaintiff's Eighth Amendment claim against John Doe Industrial Commissary Supervisor survived *sua sponte* review. *See id.* at 14. The Court directed

3

the New York State Office of the Attorney General ("NYOAG") to attempt to ascertain the identity and address of John Doe Industrial Commissary Supervisor, if possible, and to provide this information to the plaintiff within thirty days.  *See id.*

On December 14, 2022, the NYOAG submitted a letter in an attempt to assist plaintiff in identifying John Doe Industrial Commissary Supervisor.  *See* Dkt. No. 13.  On January 23, 2023, Magistrate Judge Christian F. Hummel issued a Text Order requiring plaintiff to review counsel's submission and submit, within thirty days, a second amended complaint substituting the named defendant in place of John Doe Industrial Commissary Supervisor.  *See* Dkt. No. 14.  Plaintiff did not submit an amended complaint within thirty days. *See* Dkt. No 15.  On March 14, 2023, Judge Hurd *sua sponte* extended plaintiff's deadline to submit the second amended complaint, or to notify the Court within thirty days as to why the information in the NYOAG's status report was insufficient.  *See id.*

On May 5, 2023, plaintiff submitted a Second Amended Complaint naming Great Meadow Correctional Facility Commissary Supervisor Carrie Hart as the sole defendant.  *See* Dkt. No. 16.  On August 21, 2023, Judge Hummel accepted plaintiff's second amended complaint and held that plaintiff's Eighth Amendment claims against defendant Hart survived *sua sponte* review.  *See* Dkt. No. 17 at 14.  Defendant Hart answered plaintiff's Second Amended Complaint on October 30, 2023.  *See* Dkt. No. 23.

On August 30, 2024, defendant filed a motion for summary judgment.  *See* Dkt. No. 30.  Along with the motion, defendant served plaintiff a notification of the consequences of the failure to respond to a Motion for Summary Judgment.  *See* Dkt.

No. 30-1.  On the same day, this Court notified plaintiff of his response deadline and also notified him of the consequences of failing to timely respond to the motion.  *See* Dkt. No. 31.

On September 23, 2024, plaintiff requested an extension of time to respond to defendant's motion for summary judgment and permission to file a motion for appointment of counsel.  *See* Dkt. No. 32.  On September 23, 2024, Judge Hummel granted plaintiff's requests and extended his deadline to respond to October 23, 2024.  *See* Dkt. No. 33.  On October 31, 2024, Judge Hummel *sua sponte* extended plaintiff's time to respond to December 2, 2024.  *See* Dkt. No. 34.  To date, plaintiff has not responded to defendant's Motion for Summary Judgment or Statement of Material Facts.

### C.  Arguments

Plaintiff claims that defendant was deliberately indifferent to his safety in the commissary warehouse in violation of the Eighth Amendment.  *See* Dkt. No. 16 at 6.  Plaintiff claims that defendant knew that the pallet jack was broken and posed a risk of harm but ordered plaintiff to use it to complete his work duties on September 30, 2020.  *See id.*

Defendant argues that summary judgment is warranted because plaintiff failed to exhaust his administrative remedies or establish the elements of an Eighth Amendment conditions-of-confinement claim, and that, even if such claim can be established, defendant is entitled to qualified immunity.  *See generally* Dkt. No. 30-3.

## II.  LEGAL STANDARD

### A.  Summary Judgment

5

Fed. R. Civ. P. 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, summary judgment cannot be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").  The party seeking summary judgment bears the burden of informing a court of the basis for its motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "mere conclusory allegations, speculation, or conjecture," *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" to support its claims, *Anderson*, 477 U.S. at 252.  At the same time, a court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 133, 150 (2000).  The Court "may not make any

credibility determinations or weigh the evidence." *Id.* Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a plaintiff proceeds pro se, the court must grant him "special solicitude," construe his submissions "liberally," and read such submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted) (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). This is because "a pro se litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if [ ] not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing *Triestman*, 470 F.3d at 475). However, the Second Circuit has cautioned district courts that they "cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest." *Triestman*, 470 F.3d at 477 (citations omitted). Further, the "special solicitude" standard does not excuse "frivolous or vexatious filings by pro se litigants," nor does it "exempt a party from compliance with relevant rules of procedural and substantive law." *Id.*

B. **N.D.N.Y. Local Rule 56.1**

Local Rule 56.1 requires a party moving for summary judgment to file and serve a Statement of Material Facts "set[ting] forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." N.D.N.Y. L.R. 56.1(a). Where the opposing party is

incarcerated and proceeding pro se, the moving party is additionally required to notify the opposing party of the possible consequences for failing to respond to the motion. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d. Cir. 1996). The opposing party must then file a statement "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b).

Where a pro se litigant fails to respond to the movant's statement of material facts, and the pro se litigant has been notified of the possible consequences for failing to respond, the facts may be deemed true to the extent that they are supported by evidence on the record. *See* N.D.N.Y. L.R. 56.1(b) ("The court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."). Similarly, "in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have 'consented' to the legal arguments contained in that memorandum under Local Rule 56.1(b)." *Sullivan v. Snider*, 8:19-CV-0129 (GTS/DJS), 2021 WL 1294595, at *10 (N.D.N.Y. Apr. 7, 2021).

However, failure to respond to a motion for summary judgment "does not, of course, mean that the motion is to be granted automatically." *Champion*, 76 F.3d at 486. The Court must assure itself of the movant's entitlement to summary judgment, regardless of whether the non-movant responded to the motion. *See, e.g., GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.,* 943 F. Supp. 2d 320, 329 (N.D.N.Y. May 6, 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations

8

to evidence in the record support the movant's assertions."). Additionally, "[w]hile '[p]ro se litigants are . . . not excused from meeting the requirements of Local Rule 56.1,' the Court retains discretion 'to consider the substance of the plaintiff's arguments' even where there is incomplete compliance with the rule." *West v. Lagree*, No. 9:22-CV-00231 (MAD/CFH), 2024 WL 3649891, at *6 (N.D.N.Y. June 10, 2024) (alterations in original) (quoting *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (internal citations omitted)), *report and recommendation adopted*, 2024 WL 3548785 (N.D.N.Y. Jul. 26, 2024).

### III. DISCUSSION[2]

#### A. Plaintiff's Failure to Respond

On August 30, 2024, defendant filed and served a motion for summary judgment, along with notice of the consequences of failing to respond to the motion. *See* Dkt. Nos. 30-1; 30-2; 30-3. On the same day, the Court also notified plaintiff of his response deadline and the consequences for failing to respond to defendant's motion. *See* Dkt. No. 31. Despite these warnings, plaintiff did not respond.

Although plaintiff failed to comply with Local Rule 56.1 by responding to defendant's statement of material facts or opposing the motion's legal arguments, in deference to plaintiff's pro se status, the Court will review the entire record to determine whether any genuine dispute of material fact exists precluding summary judgment. *See, e.g., Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that the court "may in its discretion opt to conduct an assiduous review of the record."), *abrogated on other grounds by Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167 (2009);

---

[2] Unless otherwise noted, copies of any unpublished cases cited in this Report-Recommendation & Order have been provided to plaintiff.

*Frantti v. New York*, 850 F. App'x 17, 19 (2d Cir. 2021) (summary order) ("district courts have considerable latitude to fashion rules that will assist them in determining whether summary judgment is appropriate."); *Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (determining that granting summary judgment without verifying the supporting facts "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"); *Rosa v. Hoke*, No. 9:23-CV-573 (AJB/PJE), 2025 WL 1649044, at *3 (N.D.N.Y. June 11, 2025) ("the Local Rules on summary judgment . . . do not function as a straitjacket on a court's ability to consider the record and make its own judgment about what the facts at trial might show.").

Here, the factual assertions contained in defendant's Statement of Material Facts regarding plaintiff's failure to exhaust his administrative remedies are properly supported by evidence. Defendant asserts that plaintiff was taken to medical immediately after the incident causing his injury, and this assertion is consistent with the facts asserted in plaintiff's Second Amended Complaint. *See* Dkt. No. 20-5 ¶ 28; Dkt. No. 16 ¶ 10. Defendant's Statement of Material Facts asserts that plaintiff did not, at any time, file a grievance regarding defendant Hart's actions, or the actions of any other prison official, regarding the pallet jack incident. *See* Dkt. No. 30-2 ¶ 37. This assertion is supported by the copies of plaintiff's grievances relating to the denial of medical care following the accident; the declaration of Alexandria Cutler, IGP Supervisor; the declaration of Rachael Seguin; IGP Director; and the CORC grievance list. *See* Dkt. Nos. 30-7; 30-8; 30-9; 30-20. Further, plaintiff makes no mention of filing any grievance

related to defendant Hart in his Second Amended Complaint.[3]  *See generally* Dkt. No. 16.  Accordingly, because the aforementioned facts are supported by the evidentiary record and uncontroverted, they are deemed admitted.

### B.  **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Whether the plaintiff has exhausted his administrative remedies is a question of law . . . .  Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer."  *Jenkins v. Short,* No. 9:19-CV-1352 (GTS/TWD), 2020 WL 9264842, at *5 (N.D.N.Y. Nov. 17, 2020) (citing *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999)) (additional citations omitted), *report and recommendation adopted,* 2021 WL 958512 (N.D.N.Y. Mar. 15, 2021).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Exhaustion is required even if the incarcerated individual is seeking monetary damages that would be unattainable through the prison's administrative proceedings.  *See Ross v. Blake*, 578 U.S. 632, 640 (2016); *Woodford v. Ngo,* 548 U.S. 81, 85 (2006).

---

[3] Although the failure of a plaintiff to assert exhaustion in his complaint is not determinative of the issue of exhaustion, *Jones v. Block*, 549 U.S. 199, 216 (2007), the absence of any argument or evidentiary support that plaintiff exhausted his conditions-of-confinement claim renders this fact undisputed.

"[F]ailure to exhaust is an affirmative defense, [therefore] the defendant bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements." *Jenkins*, 2020 WL 9264842, at *5. A defendant satisfies this burden by "establishing, by pointing to 'legally sufficient sources' such as statutes, regulations, or grievance procedures, that a grievance process exists" and that plaintiff failed to use the procedure. *Hubbs v. Suffolk Cnty. Sheriff's Dep't,* 788 F.3d 54, 59 (2d Cir. 2015) (quoting *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003)).

Once a defendant satisfies their burden, "the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." *Coleman v. Nolan*, No. 9:15-CV-40 (ATB), 2018 WL 4732778 at *4 (N.D.N.Y. Oct. 2, 2018) (citing *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)). This is because the PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. As an incarcerated individual's ability to exhaust administrative remedies "hinges on the availability of administrative remedies," an incarcerated individual must exhaust all administrative remedies available to him, but "need not exhaust unavailable ones." *Id.* (citing 42 U.S.C. § 1997e(a)). Accordingly, "while 'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was unavailable, 'the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant.'" *Coleman*, 2018 WL 4732778, at *4 (quoting *Bailey v. Fortier*, No. 9:09-CV-0742 (GLS/DEP), 2012 WL 6935254, at *5-6 (N.D.N.Y. Oct. 4, 2012) *adopting Report-Recommendation*, 2013 WL 310306 (N.D.N.Y. Jan. 25, 2013)).

12

Here, there is no dispute that, at all relevant times, DOCCS had in place a three-step Inmate Grievance Program ("IGP"). *See* 7. N.Y.C.R.R. § 701.

> First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. [7 N.Y.C.R.R.] § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. *Id*. §§ 701.5(b)(2), (3). Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. Id. § 701.5(c)(3)(i). Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. Id. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

*Hudson v. Kirkey*, No. 9:20-CV-00581 (LEK/DJS), 2023 WL 2324988, at *3 (N.D.N.Y. Mar. 2, 2023) (additional citation omitted).

Plaintiff filed three grievances, dated October 8, October 20, and October 24, 2020. *See* Dkt. No. 30-7. The prison's IGP office consolidated these grievances into a single grievance, identified by the date of October 13, 2020. *See* Dkt. Nos. 30-3 at 8-9; 30-7; 30-9 at 2. The grievances alleged that a Corrections Officer prevented plaintiff from seeking medical care for his foot, requested medical attention for his injury, and sought a policy change to hold Corrections Officers accountable for making false claims about inmates' refusal of medical care. *See* Dkt. No 30-7. The IGP has no record of plaintiff filing any grievances with respect to a conditions-of-confinement claim against

13

defendant Hart arising out of the September 30, 2020, incident. *See* Dkt. Nos. 30-7; 30-8; 30-9; 30-10; 30-11; 30-13.

Plaintiff's grievances concerning his access to medical care do not serve to exhaust his administrative remedies with respect to his conditions-of-confinement claim against defendant Hart. Under the DOCCS' grievance procedure, an incarcerated individual's grievances must contain a "specific description of the problem and the action requested." 7 N.Y.C.R.R. § 701.5 (a)(2). The grievance need not identify the individual responsible for the alleged misconduct. *See Matthews v. New York State Dep't of Corr.,* No. 9:17-CV-503 (TJM/ML), 2022 WL 823851, at *7 (N.D.N.Y. Mar. 18, 2022) (citing *Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009)) (additional citations omitted) ("New York's grievance procedures do not require prisoners to identify the individuals responsible for alleged misconduct, therefore neither does the PLRA for exhaustion purposes."). However, the grievance must provide prison officials with "the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the alleged incident." *Id*. at 6.

Here, plaintiff's second amended complaint states that the grievances he filed involved only the aforementioned lack of medical care. *See generally* Dkt. No. 16. Plaintiff testified that he does not believe defendant was responsible for this alleged lack of medical care, *see* Dkt. No. 30-5 at 98-99; rather, plaintiff attributes this lack of medical care to a corrections officer who allegedly made false statements about plaintiff's refusal of care. *See* Dkt. No. 30-5 at 34; 30-7 at 1. Thus, the grievances plaintiff did file, arising out of the September 30, 2020, incident – which did not contain a

14

specific description of any problem related to defendant Hart – did not serve to exhaust his administrative remedies on his Eighth Amendment conditions-of-confinement claim.

### C. Availability of Administrative Remedies

Having before the Court no argument from plaintiff regarding availability, out of special solicitude, the undersigned has searched the record for potential arguments that administrative remedies may have been unavailable to him. *See Jackson v. West*, No. 9:23-CV-0306 (LEK/PJE), 2025 WL 1033787, at *4 (N.D.N.Y. Feb. 20, 2025), *report and recommendation adopted*, No. 9:23-CV-306 (LEK/PJE), 2025 WL 814966 (N.D.N.Y. Mar. 14, 2025).

The Supreme Court of the United States, in *Ross,* identified three circumstances in which a court may find administrative remedies are not "available" for purposes of exhaustion under the PLRA:

> [A]n administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Ross*, 578 U.S. at 643-44.

First, there nothing in the record to support that the "dead end" exception applies. *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016). Although plaintiff did not grieve the conditions-of-confinement claim with respect to defendant Hart, as noted above, plaintiff grieved his alleged lack of medical care arising out of the same incident. *See* Dkt. No. 16; *Jackson*, 2025 WL 1033787, at *12 ("Courts have rejected arguments that the grievance procedure was a 'dead end' where the plaintiffs chose to participate

15

in the grievance procedure in some way, even in unrelated matters, concluding that such participation demonstrates that the plaintiffs did not view the grievance procedure as a dead end.") (citing *Luke Matthews*, *et al. v. L. Sweeny, Clinton Corr. Sergeant*, *et al.*, No. 9:17-CV-0503 (GTS/ML), 2025 WL 447734, at *7, *7 n.13 (N.D.N.Y. Feb. 10, 2025)); *see also Blake v. Porlier*, No. 9:18-CV-1008 (DNH/CFH). At his deposition, plaintiff testified that these grievances were ultimately resolved to his satisfaction. *See* Dkt. No. 30-5 at 27:3-13 ("it's resolved now. The medical issue is resolved now. That was—that was the problem. It's resolved. . . . I received the medical, so it's a moot point"). Although these grievances do not involve defendant, that plaintiff was able to grieve other matters during the same time period demonstrates that administrative remedies were not a dead end with respect to his conditions-of-confinement claim against defendant. *See Jackson*, 2025 WL 1033787, at *12.

Next, the opaqueness exception also does not apply to cure plaintiff's non-exhaustion. Administrative relief is unavailable where "[t]he regulations simply do not contemplate the situation in which the prisoner found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams*, 829 F.3d at 124. In other words, administrative relief is opaque when the procedure for the incarcerated person to procure relief under the circumstances is "so confusing that . . . no reasonable prisoner can use it." *Id*. (quoting *Ross*, 578 U.S. at 644).

During his deposition, when asked if he appealed his grievances relating to medical care to CORC, plaintiff stated, "What's that? I don't know nothing about this legal stuff. I'm not going to lie. I have no idea about this legal stuff." Dkt. No. 30-5 at

27. When defense counsel explained the requirement to appeal grievances to CORC, plaintiff stated that he did not recall whether he appealed the grievances relating to medical care to CORC. *See id.* Liberally read, plaintiff's testimony, although regarding unrelated grievances, suggests that plaintiff may not have fully understood the grievance procedure. However, plaintiff's alleged lack of knowledge as to the grievance appeals process does not demonstrate that it was "practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams*, 829 F.3d at 124.

Great Meadow's IGP Supervisor, Alexandria Cutler, declared that, upon arrival to the prison, incarcerated individuals undergo an orientation program on the prison's grievance process. *See* Dkt. No. 30-8 ¶ 4. Although Ms. Cutler did not specify whether plaintiff attended this orientation program, she stated that information regarding the grievance process—specifically Title 7 of the Official Compilation of Codes, Rules, and Regulations of the State of New York ("NYCRR") and DOCCS Directive #4040—was available to plaintiff in the prison's law library. *See id.; see also Jackson*, 2025 WL 1033787, at *9 (holding that the grievance procedure was not opaque where plaintiff claimed that he did not understand how to appeal, but the plaintiff failed to seek assistance or pay attention at the facility's IGP orientation and the plaintiff successfully initiated the first step on several grievances); *see also Henry v. Liberty*, 9:15-CV-1108 (MAD/DEP), 2016 WL 11480174, at *6 ("[A]ny subjective confusion by plaintiff regarding the applicable exhaustion policy is not a relevant consideration for the Court.") (citing *Ross*, 578 U.S. at 643).

In addition, although plaintiff's testimony suggested some confusion regarding the grievance *appeals* process, plaintiff did not even initiate the first step of the

17

grievance process with respect to his claims against defendant, despite his demonstrated knowledge of the need to file grievances evidenced by the three grievances he filed about access to medical care. *See generally* Dkt. Nos. 16, 30. Accordingly, even accepting as true plaintiff's testimony that he lacked full understanding of the grievance appeals process, plaintiff has not established that the grievance procedure was so opaque that it was practically incapable of use. *See Ross*, 576 U.S. at 1859. Thus, the "opaqueness" exception does not apply to cure plaintiff's non-exhaustion.

Finally, plaintiff was not thwarted from using the prison's grievance process regarding his claim against defendant Hart through "machination, misrepresentation, or intimidation by prison officials." *Ross*, 578 U.S. at 644. Plaintiff's Second Amended Complaint alleges that he received threats from correctional staff because he was filing grievances related to his medical care. *See* Dkt. No. 16 at 5. However, plaintiff's allegation is devoid of any information as to who made the threat or how the threat affected plaintiff's ability to file future grievances. *See id.* As this Court has stated, "general and conclusory statements that [an incarcerated individual] was threatened are insufficient to raise a triable issue of fact as to the unavailability of the grievance procedure because of intimidation by prison administrators." *Gibbs v. Gadway*, No. 9:19-CV-281 (GTS/DJS), 2019 WL 5191506, at *5 (N.D.N.Y. Oct. 15, 2019), *report and recommendation adopted*, No. 9:19-CV-0281 (GTS/DJS), 2020 WL 1227156 (N.D.N.Y. Mar. 13, 2020) (quoting *Lewis v. Wasielewski*, No. 15-CV-0168-RJA-MJR, 2018 WL 4732755, at *6 (W.D.N.Y. July 10, 2018), *report and recommendation adopted*, No. 15-CV-168-A, 2018 WL 4692476 (W.D.N.Y. Oct. 1, 2018)). "Allegations of threats are

conclusory where a plaintiff's allegation 'does not indicate who threatened him, when he was threatened, or how he was threatened.'" *Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *8 (N.D.N.Y. May 9, 2017), *report and recommendation adopted*, No. 915-CV-1079 (GTS/CFH), 2017 WL 2790530 (N.D.N.Y. June 27, 2017) (citing *Johnson v. Fraizer*, No. 16-CV-6096(CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016)). Further, plaintiff does not allege that the threats came from a prison administrator. *See Ross*, 578 U.S. at 643-44. As plaintiff's threat allegation is conclusory and not even tied to the conditions-of-confinement claim at issue in this action, it is insufficient to raise a triable issue of fact as to whether the alleged threat rendered administrative remedies unavailable to him.

Accordingly, the "threat" exception to the PLRA's exhaustion requirement does not apply. As plaintiff failed to exhaust available administrative remedies, and there is no exception to his failure to exhaust that applies, the undersigned recommends that defendant's Motion for Summary Judgment be granted.[4]

### IV. **CONCLUSION**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that defendant Hart's Motion for Summary Judgment, Dkt. No. 30, be **GRANTED**; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation and Order on parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the

---

[4] As plaintiff's failure to exhaust is incurable at this point, the recommended dismissal is with prejudice. *See Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).

19

Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *See Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).[5]

Dated: July 15, 2025
Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge

---

[5] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was filed/dated to serve and file any objection.  *See* Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, the deadline is extended to the next day that is not a Saturday, Sunday, or legal holiday.  *See* Fed. R. Civ. P. 6(a)(1)(c).